1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**

9          **EASTERN DISTRICT OF CALIFORNIA**

10

11   EMILIO TARANGO,                    )   Case No.: 1:16-cv-0099 - JLT
                                        )
12                  Plaintiff,          )   ORDER GRANTING IN PART PLAINTIFF'S
                                        )   MOTION FOR ATTORNEY FEES
13          v.                          )
                                        )   (Doc. 46)
14   CITY OF BAKERSFIELD,               )
                                        )
15                  Defendant.          )
                                        )
16   _____    )

17          Emilio Tarango and the City of Bakersfield entered into a settlement agreement, which

18   included a provision stating the City "agreed to pay reasonable attorney's fees and costs awarded by

19   the Court (subject to the right of an appeal)." (Doc. 44 at 2) The parties also agreed the Court would

20   adjudicate Plaintiff's application for attorneys' fees and costs (*id.*), which is now pending before the

21   Court. (Doc. 46) For the reasons set forth below, Plaintiff's motion for fees and costs is **GRANTED**

22   in part, in the modified amount of **$107,595.00**.

23   **I.      Background**

24          Plaintiff reported that he "is a profoundly deaf individual whose first and primary language is

25   American Sign Language." (Doc. 1 at 3, ¶ 7) He was hired by the City of Bakersfield in 1995, and

26   has remained employed by the City for over twenty years. (*Id.*, ¶¶8- 9) Plaintiff asserted he was hired

27   as Fleet Service Worker and "was promoted to Fleet Service Worker II in 1998," but since that time

28   "has only been promoted after filing a discrimination complaint with the California Department of Fair

                                              1

Employment and Housing." (*Id.*, ¶¶ 10-12) Plaintiff alleged he "was denied the opportunity to take classes and receive further training, unlike other non-disabled co-workers." (*Id.*, ¶ 14) In addition, Plaintiff alleged he "has been overlooked for new job opportunities that arise in his workplace despite his seniority over other younger, non-deaf co-workers." (*Id.*, ¶ 12) For example, Plaintiff reported the City asked him "train younger, non-deaf employees, who have then been promoted over him and given the ability to earn more pay." (*Id.*, ¶ 13)

Plaintiff asserted that throughout the course of his employment, he "made repeated requests for an ASL interpreter to facilitate effective communication, but these requests are routinely denied." (Doc. 1 at 3, ¶ 15) As a result, Plaintiff contended he "has been forced to attend mandatory meetings without the benefit of an ASL interpreter." (*Id.*, ¶ 16) In addition, Plaintiff reported he "has never been provided an ASL interpreter for safety classes, which he is forced to sit through with his other co-workers despite the fact that he is unable to hear or participate by asking questions or understanding co-workers' questions and the answers thereto." (*Id.* at 3-4, ¶ 17)

He alleged he was "subjected to exceptional scrutiny by his supervisors, who have treated him rudely and with deliberate indifference because he is deaf." (Doc. 1 at 4, ¶ 18) He reported, "This treatment has caused [him] to feel belittled, humiliated, ashamed, and completely isolated, which has also led to anxiety and depression." (*Id.*, ¶ 19)

Plaintiff filed a Charge of Discrimination with both the Department of Fair Employment and Housing and the Equal Employment Opportunity Commission on July 3, 2015. (Doc. 1 at 4, ¶ 23) The DFEH issued a Notice of Right to Sue on September 9, 2015 and the EEOC issued a Notice of Right to Sue on October 29, 2015. (*Id.*, ¶¶ 24-25) He initiated the action now pending before the Court by filing a complaint on January 21, 2016. (Doc. 1) Plaintiff alleged the City was liable for the following causes of action: (1) discrimination based on his disability in violation of Title I of the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.*; (2) failure to accommodate disability in violation of Title I; (3) violations of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; (4) harassment based on disability in violation of the Fair Employment and Housing Act ("FEHA"), Cal. Gov't. Code § 12940; (5) disability discrimination in violation of Cal. Gov't Code §12940; (6) failure to accommodate disability in violation of Cal. Gov't Code §12940(k); (7) failure to engage in the interactive process in

violation of Cal. Gov't Code § 12940(n); and (8) failure to take reasonable steps to prevent harassment and discrimination in violation of Cal. Gov't Code § 12940(j). (*See generally* Doc. 1 at 5-12)

On July 28, 2017, the parties entered into a settlement agreement (Doc. 41), memorialized in the "Consent Decree Re: Settlement of Equitable Relief Claims" filed on August 10, 2017 (Doc. 43). The terms include, but are not limited to, an agreement that the City "will provide a qualified ASL Interpreter(s) for all [City] Safety and Training Meeting and all standard training sponsored by the [City] involving Mr. Tarango's employment with [the City]." (Doc. 43 at 2, ¶ 2) In addition, the City "will provide either ASL Interpreter(s) or Video Remote Interpreting ("VRI") Service for Mr. Tarango, whichever is most appropriate to ensure effective communication in the City's reasonable discretion," for individual scheduled meetings, general meetings, and meetings with healthcare professionals. (*Id.* at 3, ¶¶ 2-3, 6) Further, the parties set forth additional terms for equitable relief in the Consent Decree, which was signed and ordered by the Court on October 25, 2017. (Doc. 49) The parties also agreed the Court would adjudicate Plaintiff's application for attorneys' fees and costs. (Doc. 44 at 2)

Pursuant to the terms of the parties' agreement, Plaintiff filed the motion for attorney fees and costs now pending before the Court. (Doc. 46) The City filed its opposition to the motion on October 4, 2017 (Doc. 47), to which Plaintiff filed a brief in reply on October 11, 2017 (Doc. 48).

## II.    Legal Standard

Plaintiff seeks an award of fees, noting the Americans with Disability Act ("ADA"), the Rehabilitation Act, and FEHA "each authorize an award of attorneys' fees and costs to the prevailing party in a civil lawsuit brought thereunder." (Doc. 46 at 1)

Specifically, pursuant to ADA, "the court … in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205; *Barrios v. California Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002) ("a prevailing party under the ADA "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust"). The Rehabilitation Act also provides that "the court… may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 29 U.S.C. §794a(b); *see also Jacobson v. Delta Airlines, Inc.,* 742 F.2d 1202, 1203 (9th Cir. 1984) (explaining the act "expressly authorizes courts to award the prevailing party, other than the United States, in any

action or proceeding under the Rehabilitation Act a reasonable attorney's fee as part of the costs").

Likewise, California law provides that a prevailing party may recover fees for a violation of FEHA, "to provide fair compensation to the attorneys involved in the litigation and encourage litigation of claims that in the public interest merit litigation." *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 971 (2010). Accordingly, in relevant part, FEHA provides: "In actions brought under this section, the court, in its discretion, may award to the prevailing party reasonable attorney's fees and costs, including expert witness fee." Cal Gov't Code § 12965.

### III. Discussion and Analysis

#### A. Plaintiff's Status as a Prevailing Party

Under federal law, a "prevailing party" is one that affects "a material alteration of the legal relationship between the parties [whereby] the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." *Farrar v. Hobby*, 506 U.S. 103, 113 (1992). Thus, the Supreme Court determined that "settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees." *Buckhannon Board & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001).

While, as here, consent decrees may "not always include an admission of liability by the defendant… it nonetheless is a court-ordered 'change in the legal relationship between the plaintiff and the defendant.'" *Buckhannon Board*, 532 at 604 (quoting *Texas State Teachers Assoc. v. Garland Independent School Dist.*, 489 U.S. 782, 792 (1989)). Because the parties have entered into a settlement to be enforced by the consent decree, there is no dispute that Plaintiff is a prevailing party.

#### B. Fee Award

The Ninth Circuit utilizes the "lodestar" method to compute reasonable attorneys' fees, which represents the number of hours reasonably expended multiplied by a reasonable hourly rate. *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (citations omitted). The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).

1    In this case, Plaintiff seeks an award of fees in the amount of $194,218.50.[1] (Doc. 48 at 11)

2    According to Plaintiff, the hours expended by the attorneys and their staff were reasonable.  (Doc. 46 at

3    3-4)  In addition, he asserts the attorneys should be awarded hourly rates from outside the local

4    community.  (*Id.* at 3-5)  On the other hand, the City asserts "the fees sought by Plaintiff should be

5    significantly truncated as they are excessive, duplicative and unnecessary."  (Doc. 47 at 2)  Further, the

6    City contends, "The rate charged by Plaintiff's counsel should also be reduced to the rate which reflects

7    those charged within the local community… because Plaintiff could have hired local counsel."  (*Id.*)

8                            1.      Requested hourly rates

9        The Supreme Court explained that attorney fees are to be calculated with "the prevailing market

10   rates in the relevant community."  *Blum v. Stenson*, 465 U.S. 886, 895-96 and n.11 (1984).  In general,

11   the "relevant community" for purposes of determining the prevailing market rate is the "forum in which

12   the district court sits."  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 97 (2008).  Thus, when a case

13   is filed in the Fresno Division of the Eastern District of California, "[t]he Eastern District of California,

14   Fresno Division, is the appropriate forum to establish the lodestar hourly rate . . ."  *See Jadwin v.*

15   *County of Kern*, 767 F.Supp.2d 1069, 1129 (E.D. Cal. 2011).

16       However, the Court may apply "rates from outside the forum… 'if local counsel was

17   unavailable, either because they are unwilling or unable to perform because they lack the degree of

18   experience, expertise, or specialization required to handle properly the case.'"  *Barjon v. Dalton*, 132

19   F.3d 496, 500 (9th Cir. 1997) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)).

20   "The court may rely on rates outside the local forum if the plaintiff establishes either unwillingness *or*

21   an inability; '[t]here is no requirement that plaintiffs prove both.'"  *Jadwin*, 767 F. Supp. 2d at 1124

22   (quoting *Barjon*, 132 F.3d at 500 [emphasis added]).

23                            a.      Unavailability

24       Plaintiff contends local counsel was unavailable because "no attorneys in the Bakersfield area

25   specialized in discrimination cases involving Deaf individuals."  (Doc. 46 at 5, citing Tarango Decl.

26   [Doc. 46-7]; Jackson Decl. [Doc. 46-8]; Rozynski Decl. ¶¶ 5–6)

27   ───────────────
28        [1] In the motion, Plaintiff indicates that he is seeking an award of $209,218.50.  (Doc. 46 at 8)  After identifying an
     error in the hours reported for Andrew Rozynski, Plaintiff corrected the amount requested in the reply brief to $194,218.50.
     (Doc. 48 at 11)

Plaintiff reports he "needed counsel who understands the unique issues presented by Deafness, including communication and cultural issues not readily known to the public or to a practitioner without such specialty." (Doc. 46-7 at 2, Tarango Decl. ¶ 2)  He asserts his "search for an attorney that possessed the specific skills, experience, specialization and resources to assist … with [his] claims against the City of Bakersfield led [him] to the firm of Eisenberg & Baum Law Center for Deaf and Hard of Hearing." (*Id.*, ¶ 3)  Plaintiff contends that after contacting Eisenberg & Baum, LLP, he contacted the Bakersfield Greater Los Angeles Agency on Deafness, which referred him to an attorney in Los Angeles. (*Id.*, ¶ 4)  Plaintiff reports he "was not referred to any attorney in Bakersfield." (*Id.*)

Plaintiff asserts that he retained the services of Eisenberg & Baum because it "is committed to ensuring that deaf or hard of hearing people receive the protections provided by law." (Doc. 46-7 at 2, Tarango Decl. ¶ 5)  He asserts the law firm has "a deaf-friendly office that provides accommodations, including sign language interpreters and videophones." (*Id.* at 3, ¶ 5)  Further, Plaintiff observes that the law firm has an "attorney fluent in sign language and a deaf client liaison." (*Id.* at 3)  According to Plaintiff, he "not locate any local Bakersfield attorneys possessing these resources." (*Id.*)

Caroline Jackson, a staff attorney with the National Association for the Deaf ("NAD"), also has filed a declaration in support of the fees requested by Plaintiff's counsel.  Ms. Jackson asserts that the organization "has been engaged in litigation to enforce the Rehabilitation Act, and subsequently the Americans with Disabilities Act (ADA) on behalf of deaf and hard of hearing individuals." (Doc. 46-8 at 1, Jackson Decl. ¶ 2)  Ms. Jackson reports the NAD "maintain[s] a comprehensive list of attorneys in all fifty states who are willing to represent deaf and hard of hearing individuals in lawsuits enforcing their rights under the ADA and Rehabilitation Act." (*Id.*, ¶ 3)  According to Ms. Jackson, NAD is "frequently… contacted by attorneys from all fifty states who are representing deaf of hard of hearing individuals in various capacities." (*Id.*)  Ms. Jackson asserts NAD is "aware of approximately one dozen attorneys in the San Francisco, Los Angeles, and San Diego areas that meet this description," but is "not aware of any attorneys elsewhere in the state that have the qualifications and expertise necessary to represent deaf or hard of hearing individuals in ADA and/or Rehabilitation Act cases." (*Id.* at 2, ¶ 4)

On the other hand, Defendant contends Plaintiff fails to demonstrate the unavailability of local counsel. (Doc. 47 at 2, 12-13)  Defendant's counsel, John Szewczyk, reports he has worked on several

cases "involving plaintiffs whose claims were premised upon the fact that they suffered alleged discrimination based upon the fact that they were deaf." (*Id.*) Mr. Szewczyk asserts, "In each of these cases the attorneys representing the plaintiffs were able to effectively communicate with their clients and conduct the litigation even though they themselves did not use American Sign Language." (Doc. 47-3 at 2, ¶ 6) Further, Mr. Szewczyk reports that based upon his "own experience and research," there are numerous different attorneys and firms who have the ability to take on and process claims held by plaintiffs claiming discrimination in the employment area." (Doc. 47 at 12-13) In particular, Defendant asserts that "a prominent local attorney whose office is based in Bakersfield, to wit, Thomas J. Anton, has significant experience in dealing with individuals with hearing impairments as he is related to an individual with such deficits." (*Id.* at 13)

Thomas Anton reports that his practice includes "representing plaintiffs in wrongful termination, discrimination, harassment and retaliation lawsuits, including claims involving disability discrimination." (Doc. 47-1 at 2, Anton Decl. ¶ 3) Mr. Anton asserts he is "familiar with the challenges faced by individuals who have hearing impairments as my son-in-law, Thomas P. Horejes, is hearing impaired." (*Id.*, ¶ 4) Mr. Horejes "has been affiliated with Gallaudet University for a number of years, which is a leading institution of higher education that is intimately connected to the deaf community in the United States." (*Id.*) Mr. Anton reports he is "thus intimately familiar with all aspects of the litigation process involving claims of disability discrimination, including claims by individuals who are deaf or otherwise hearing impaired." (*Id.*, ¶ 5)

### i. Unwillingness

Plaintiff did not contact any local attorneys for representation in this action, and does not report that local counsel were unwilling to represent him. (*See generally* Doc. 46-7) As such, this prong weighs against the application of hourly rates from outside the local forum. *Barjon*, 132 F.3d at 500.

### ii. Inability

Plaintiff asserts he "needed counsel who understands the unique issues presented by Deafness, including communication and cultural issues not readily known to the public or to a practitioner without such specialty." (Doc. 46-7 at 2, Tarango Decl. ¶ 2) In addition, Plaintiff asserts he chose the law firm of Eisenberg & Baum because it has "a deaf-friendly office that provides accommodations,

including sign language interpreters and videophones," as well as an "attorney fluent in sign language and a deaf client liaison." (*Id.* at 3, ¶ 5)

Importantly, Plaintiff fails to identify communication and cultural issues of which local counsel lacked knowledge. At most, he identifies potential communication barriers, not concerns about the ability of local counsel to prosecute disability discrimination or employment law claims. Further, the lack of awareness of local counsel by organizations—which do not explain how they compile lists of attorneys who represent deaf individuals or evaluate their qualifications—does not support a conclusion that local counsel was unavailable or unable to represent Plaintiff in this action. To the contrary, as Defendants observe, local attorneys have represented deaf individuals (Doc. 47 at 12-13), and identified an attorney in Bakersfield who is both "intimately familiar" with the challenges faced by the deaf community and disability discrimination claims. (Doc. 47-1 at 2, Anton Decl. ¶¶ 3-5)

Moreover, this Court is well aware of the number cases in the local region that raise disability-related claims for violations of the ADA, Rehabilitation Act, and FEHA.[2] *See, e.g., D'Lil v. Riverboat Delta King, Inc.,* 2015 WL 5092714 at*11 (E.D. Cal. Aug. 28, 2015) ("there is certainly no shortage of ADA cases in this district"). Accordingly, the Court finds Plaintiff fails to carry the burden to demonstrate local counsel were unable to represent Plaintiff and lacked "the degree of experience, expertise, or specialization required" to prosecute the disability discrimination and employment claims presented in Plaintiff's complaint. *Barjon,* 132 F.3d at 500.

b.    Rates

Plaintiff seeks hourly rates ranging from $400 to $750 for attorneys, and the rate of $200 per hour for non-attorney staff. (Doc. 46 at 6) However, the hourly rates requested by counsel and the professional staff are generally not in accord with the market rate for this legal community.

i.    *Attorneys*

As the Ninth Circuit observed, "determining an appropriate 'market rate' for the services of a lawyer is inherently difficult …." *Camacho,* 523 F.3d at 979 (quoting *Blum,* 465 U.S. at 895 n. 11). A

---

[2] Likewise, this Court is aware of a local law firm representing a deaf individual in an action in a matter before this Court, alleging violations of the ADA and civil rights. *See Trevino v. City of Bakersfield,* Case No. 14-cv-1873-JLT, 2016 U.S. Dist. LEXIS 37457 (E.D. Cal. Mar. 21, 2016). Despite the communication barrier, local counsel was able to prosecute the plaintiff's claims against the City, defeating a motion for summary judgment and taking the action to trial. (*See id.*)

reasonable rate accounts for the lawyer's "experience, skill, and reputation," and the rates awarded in the legal community in which the Court sits. *Id.*; *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). In evaluating hourly rates, the Court may consider "[a]ffidavits of the plaintiffs' attorneys and other attorneys regarding fees in the community" and hourly rates paid in other cases. *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The Court may apply "either current or historically prevailing rates," though "the use of current rates may be necessary to adjust for inflation if the fee amount would otherwise be unreasonable." *Schwarz*, 73 F.3d at 908.

Previously, this Court observed a requested hourly rate of $650 per hour was "high for even the most experienced attorneys in the Eastern District." *Ontiveros v. Zamora*, 303 F.R.D. 356, 374 (E.D. Cal. 2014) (citing *Johnson v. Allied Trailer Supply*, 2014 WL 1334006, at *5 (E.D. Cal. Apr. 3, 2014); *Joe Hand Promotions, Inc. v. Albright*, 2013 WL 4094403, at *2 (E.D. Cal. Aug. 13, 2013). Rather, the Court determined "hourly rates generally accepted in the Fresno Division for competent experienced attorneys [are] between $250 and $380, with the highest rates generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience." *Silvester v. Harris*, 2014 WL 7239371 at *4 (E.D. Cal. Dec. 2014); *see also Trujillo v. Singh*, 2017 WL 1831941 at *2-3 (E.D. Cal. May 8, 2017) (awarding the requested hourly rate of $300 to local counsel with 15 years of experience, finding this amount was appropriate for the Fresno Division for an ADA case); *Miller v. Schmitz*, 2014 WL 642729 at *3 (E.D. Cal. Feb. 18, 2014) (awarding $350 per hour for an attorney with 20 years of experience). For attorneys with "less than ten years of experience . . . the accepted range is between $175 and $300 per hour."[3] *Silvester*, 2014 WL 7239371 at *4 (citing *Willis v. City of Fresno*, 2014 WL 3563310 (E.D. Cal. July 17, 2014); *Gordillo v. Ford Motor Co.*, 2014 WL 2801243 (E.D. Cal. June 19, 2014)). With these parameters in mind, the hourly rates for Plaintiff's counsel must be adjusted to calculate the lodestar.

Andrew Rozynski, lead trial counsel on this action, partner at Eisenberg & Baum, and "the co-

---

[3] Notably, the City filed a declaration from Gabriel Godinez, an attorney who maintains his office in Bakersfield, California. (Doc. 47-2) Mr. Godinez reports he has practiced law for eleven years, and has "been involved in a significant number of lawsuits involving the representation of plaintiff[s] who have suffered discrimination, harassment and retaliation within the workplace." (*Id.*, Godinez Decl. ¶ 3) Mr. Godinez reports he bills $325 per hour for such work (*id.*, ¶ 5), which is consistent with the Court's survey regarding the hourly rates within the Fresno Division of the Eastern District.

director of The Law Center for Deaf and Hard of hearing," reports that he has "been admitted to the Bar of the State of New Jersey since 2012 and to the Bar of the State of New York since 2012." (Doc. 46-1 at 1-3, Rozynski Decl. ¶¶ 2-3, 5, 7) Mr. Rozynski seeks an hourly rate of $500 for his work on this case, which included "supervis[ing] and review[ing] all litigation activity in this matter, including all work performed by the attorneys and staff employed by []his office." (*Id.*, ¶¶ 3, 7) Mr. Rozynski reports he has "litigat[ed] disability discrimination cases for over 200 Deaf plaintiffs nationwide, including several large multi-plaintiff cases." (*Id.* at 2, ¶ 5) He also reports he is the child of deaf parents, and as a result is "fluent in American Sign Language and … intimately familiar with Deaf culture." (*Id.*) In light of the fact that Mr. Rozynsky has been admitted to the bar for less than six years yet has extensive experience with disability discrimination litigation, the Court finds $250 is an appropriate hourly rate for Mr. Rozynski. *See Silvester*, 2014 WL 7239371 at *4.

Leah Wiederhorn and Brittany Shrader also seek the hourly rate of $500 for their work on the action, "which consisted of drafting and reviewing trial submissions and crafting trial strategy." (Doc. 46 at 6, Doc. 46-1 at 4-5, Rozynski Decl. ¶¶ 9-10) According to Mr. Rozynski, Ms. Wiederhorn was admitted to the bar in 2007, and "has been practicing as a trial lawyer for ten years, with a special emphasis on civil rights and public interest." (Doc. 46-1 at 4, Rozynski Decl. ¶ 9) In addition, he reports Ms. Wiederhorn previously "litigated section 1983 cases in federal court and was a Legal Aid attorney for seven years" and now "is routinely admitted Pro Hac Vice in federal courts for the purpose of litigating discrimination lawsuits on behalf of the deaf and hard of hearing." (*Id.*) Ms. Wiederhorn "is familiar with [d]eaf culture, has good command of American Sign Language, and has successfully litigated cases on behalf of deaf individuals regarding the lack of effective communication and the duty to accommodate." (*Id.*) In light of the experience Ms. Wiederhorn possesses as a member of the bar and litigating discrimination lawsuits, $300 is an appropriate hourly rate. *See Silvester*, 2014 WL 7239371 at *4 (noting the Court's review of hourly rates in the Fresno division indicated the accepted rate for up to ten years of experience was "between $175 and $300 per hour"); *see also Trujillo*, 2017 WL 1831941 at *2-3 (awarding the rate of $300 per hour in an ADA case to a lawyer with fifteen years of experience); *Luna v. Hoa Trung Vo*, 2011 WL 2078004 at *5 (E.D. Cal. May 25, 2011) (awarding an hourly rate of $295 to an attorney who had "exemplary educational credentials" and ten years of

experience as a lawyer).

Brittany Shrader "was admitted to the Bar of the State of New York in 2010." (Doc. 46-1 at 5, Rozynski Decl. ¶10)  Mr. Rozynski reports that Ms. Shrader "is in her eighth year of practice as a trial lawyer, with a special emphasis on civil rights and public interest." (*Id.*)  According to Mr. Rozynski, Ms. Shrader "grew up in … one of the largest Deaf communities in the country," and "[h]er skills in American Sign Language and familiarity with Deaf culture make her uniquely qualified to represent Deaf clients." (*Id.*)  He reports that Ms. Shrader's "skills have been sought out by members of the Deaf community because of her background," and "[s]he has successfully litigated cases on behalf of deaf individuals regarding the lack of effective communication and the duty to accommodate." (*Id.*)  In light of Ms. Shrader's level of experience, skill, and reputation with the deaf community, $275 is an appropriate hourly rate for her work on this action.  *See Silvester*, 2014 WL 7239371 at *4; *Trujillo*, 2017 WL 1831941 at *2-3.

Plaintiff seeks fees at the hourly rate of $400 for the work completed by Philip Black in this action (Doc. 46 at 6), which exceeds the amount awarded in this district for lawyers of comparable experience.  Mr. Black was admitted into the New York Bar in 2014 and the California Bar in 2016. (Doc. 46-1 at 3, Rozynski Decl. ¶8)  Mr. Rozynski reports, "Mr. Black's practice has focused primarily on representing individuals and advocacy organizations in public service access, public accommodation access, fair housing, and employment discrimination matters." (*Id.*)  Mr. Black's work on this action included "considerable legal research; the composition of pleadings, disclosures, and memoranda; the taking of depositions; and the drafting of trial documents." (*Id.* at 4, ¶8)  Mr. Rozynski notes Mr. Black was "previously certified at an hourly rate of approximately $360 per hour in an arbitration award from earlier this year," and Plaintiff "request[s] the modestly higher rate … to account for his additional experience and the added complexity of this matter." (*Id.*)  However, this action was filed in 2016— when Mr. Black had practicing for less than two years—and he has very limited experience.  Given his limited experience, and the lack of information regarding the skills he has developed in this time or his reputation in the legal community, $200 is an appropriate hourly rate for the work Mr. Black completed in this action.  *See Silvester*, 2014 WL 7239371 at *4.

The attorneys from Eisenberg & Baum partnered with attorneys at Toni Jaramilla, APLC, on

this action. (Doc. 46-1 at 3, Rozynski Decl. ¶ 7) Toni Jaramilla reports that she was admitted to the state bar of California in 1994 and has "been practicing law, particularly employment law, for over 22 years." (Doc. 46-5 at 2, Jaramilla Decl. ¶2) Ms. Jaramilla asserts that accomplishments throughout her career have been recognized on both a local and national scale, reporting:

> Very early in my career, the Los Angeles Daily Journal profiled me on its front page (October 6, 1998) and featured me again in September 9, 2002 for my successes in my employment cases and my dedication as a community leader. Through a vote of my peers, I was selected and featured as a Southern California "RISING STAR" for 2004, an award given to selected young attorneys (under age of 40 or practicing for less than 10 years) who have achieved a high degree of peer recognition and professional achievement. In the following year since, from 2005 to the present year, I was nominated and featured as a "SUPER LAWYER" in the Los Angeles Magazine and Law & Politics Magazine as a result of surveys and polling given to attorneys who have personally observed my knowledge of law and litigation skills. Since 2006 through 2013 and more recently this year (2017), I have been listed in the publication of "THE BEST LAWYERS IN AMERICA" as featured in the Los Angeles Times Magazine. I was also profiled in a 2009 article in the Los Angeles Times Magazine entitled "Women Leaders in the Law" and "Top Women Lawyers" from 2011 through 2013. In addition, I was one of a select few U.S. employment law attorneys invited to speak before delegates of the Human Rights Commission of Korea during its efforts to expand Korea's own anti-discrimination laws. In 2013, I was nominated for the "Women Making a Difference" Award by the LA Business Journal. This past year, I received recognition in the Daily Journal as the "Top 75 Labor and Employment Lawyers."

(*Id.* at 3-4, ¶5) Ms. Jaramilla also served as "Chair of the State Bar's Labor & Employment Law Section, one of the largest sections of the California State Bar chair," and "Chair of the California Employment Lawyers Association (CELA), California's largest and strongest employee rights advocate group comprised of lawyers." (*Id.* at 5, ¶¶ 6, 8) In light of both her significant level of experience and excellent reputation, it is appropriate to award Ms. Jaramilla the highest rate in this legal community, $400 per hour. *Miller*, 2014 WL 642729 at *3 (explaining the $400 per hour range for is reserved for "experienced attorneys"); *Silvester*, 2014 WL 7239371 at *4 ("the highest rates [are] generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience").

May Mallari, a senior associate with Ms. Jaramilla, "seek[s] an hourly rate of $600." (Doc. 46-5 at 7, Jaramilla Decl. ¶17) Ms. Mallari has been employed by Ms. Jaramilla since her first year of law school in June 1997, and "has been a licensed attorney practicing exclusively in labor and employment matters for over 17 years," after she was admitted to the bar in June 2000. (*Id.*) Ms. Jaramilla reports:

> Ms. Mallari was recognized as a Southern California Rising Star in the Southern California Super Lawyers Rising Stars Edition published by Los Angeles Magazine and

Law & Politics Magazine (in 2005 and 2006, 2009 and 2010). She has also been a speaker on panels at various Labor & Employment conferences, including most recently, presenting on a panel at the California Employment Lawyers Association (CELA)'s Annual Conference.

(*Id.* at 8, ¶18)  Thus, from the information provided, Ms. Mallari has over 17 years of legal experience and has established a positive reputation within the legal community for her skills and knowledge. Therefore, the hourly rate of $375 is appropriate for the work completed by Ms. Mallari. *See Miller*, 2014 WL 642729 at *3; *Silvester*, 2014 WL 7239371 at *4.

Finally, Francis Agcaoili graduated from law school in the Philippines in 2004 and was admitted to the California Bar in 2007.  (Doc. 46-5 at 8, Jaramilla Decl. ¶ 19)  Mr. Agcaoili began working with Ms. Jaramilla as a law clerk in 2004, and became an associate upon his admittance to the Bar.  (*Id.*)  Ms. Jaramilla reports that Mr. Agcaoili "has appeared and argued motions before the Los Angeles Superior Court and JAMS Arbitrations," and "represented clients in mediations and administrative hearings before the Labor Commissioner."  (*Id.*)  In light of his level of experience with employment law, $300 is appropriate for the work Mr. Agcaoili completed in this action. *See Trujillo*, 2017 WL 1831941 at *2-3; *Silvester*, 2014 WL 7239371 at *4.

Based upon the prior survey of attorney fees awarded in the Fresno Division and the Court's own knowledge, these hourly rates are reasonable for the experience, skill, and reputation of the attorneys who have worked on this action.  *See Silvester*, 2014 WL 7239371 at *4; *see also Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (concluding "the district court did not abuse its discretion either by relying, in part, on its own knowledge and experience" to determine reasonable hourly rates).

### ii.    Non-attorney staff

Plaintiff's counsel calculated their lodestar using hourly rates of $200 for non-attorney support staff.  (*See* Doc. 46 at 5)  Generally, paralegal rates within the Fresno Division of the Eastern District range between $75 to approximately $150.00.  *See, e.g., Monterrubio v. Best Buy Stores, L.P.,* 291 F.R.D. 443, 461 (E.D. Cal. 2013) ("paralegals may be compensated at an hourly rate between $75 and $100"); *Moore v. Millenium Acquisitions, LLC,* 2017 U.S. Dist. LEXIS 40722, at *8 (E.D. Cal. Mar. 21, 2017) (observing that "[j]udges of this court have specifically determined that the reasonable market rate for work performed by paralegals … in other ADA cases is $115 per hour"); *Spence v.*

*Wells Fargo Bank, N.A.*, 2012 WL 844713 at *5 (E.D. Cal., Mar. 12, 2012) (approving "paralegal or other support rates" ranging from $125 to $155).

Mr. Rozynski reports that his "paralegals and staff performed various paralegal tasks for this matter, including scheduling, preparation of materials for filing or service, etc." (Doc. 46-1 at 5, Rozynski Decl. ¶11) According to Mr. Rozynski:

> Ms. Eisenberg-Michalowski is a Deaf individual and co-director of the Law Center for the Deaf and Hard of Hearing, and she is an invaluable resource as a liaison to our clients. Ms. Friedman has over two decades of experience with civil rights claims brought on behalf of deaf individuals. Mr. Acampora is fluent in American Sign Language.

(*Id.* at 5-6, ¶11) Therefore, Plaintiff's counsel "request[s] a rate of $200 per hour for [the] paralegal and support staff." (*Id.*; *see also* Doc. 46 at 6)

Notably, based upon the limited information provided, the Court is unable to determine which of the individuals are paralegals compared to support staff. Moreover, Mr. Rozynski fails to provide any information regarding the qualifications or experience of Dina Valmon. (*See* Doc. 46-1 at 5-6) Previously, this Court determined if the plaintiff "failed to present *any* evidence of [the individual's] qualifications and experience," then "the court must deny any recovery for the alleged paralegal's time." *Davis v. Hollins Law*, 25 F. Supp. 3d 1292, 1301 (E.D. Cal. 2014) (emphasis in original). Thus, the Court declines regarding Ms. Valmon's experience, and will decline to determine an hourly rate or award fees for her work.[4]

In light of Ms. Friedman's experience of over twenty years, the highest hourly rate of $155 is appropriate. *See Spence*, 2012 WL 844713 at *5. For Ms. Eisenberg-Michalowski and Mr. Acampora—who served as a client liaisons and are fluent in American Sign Language—the Court adopts the hourly rate of $115, which has recently awarded to paralegals in ADA actions within the Fresno Division. *See Moore*, 2017 U.S. Dist. LEXIS 40722, at *8; *Trujillo*, 2017 WL 1831941 at *1. Based upon the prior survey of hourly rates and its own knowledge, these hourly rates are reasonable for the work of paralegals and support staff in the Fresno Division. *See Ingram*, 647 F.3d at 928.

---

[4] Moreover, the Court's review of the billing records indicates that Ms. Valmon performed clerical tasks including document review and Bate stamping exhibits (see, e.g., Doc. 46-2 at 16-17), which is not compensable. *See Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (work that is "clerical in nature … should [be] subsumed in firm overhead rather than billed" and is therefore not recoverable).

## 2. Hours expended

As noted above, the Ninth Circuit uses the "lodestar" method to compute reasonable attorneys' fees, which requires multiplying the number of hours reasonably expended in the action by the reasonable hourly rates for counsel and support staff. *Ferland*, 244 F.3d at 1149 n.4. A fee applicant "bears the burden of … documenting the appropriate hours expended." *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). Once the moving party provides such evidence, "the opposing party has the burden of submitting evidence 'challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits.'"[5] *Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1280 (N.D. Cal. 2014) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)).

Plaintiff asserts his attorneys expended 391.56 hours on the action, and has provided billing records for the firms that worked on the action.[6] (*See* Doc. 46 at 3-4; Doc. 48 at 11) On the other hand, the City contends the number of hours expended were not reasonable, and asserts the "Court should carefully scrutinize [the] fee application," particularly given the number of attorneys who worked on the action. The City contends many hours reported were "excessive, duplicative and unnecessary." (Doc. 47 at 4, citing *Arrieta-Colon v. Wal Mart Store, Inc.*, 422 F.Supp.2d 331, 334 (D.P.R. 2006) (emphasis omitted)) The Court addresses each of the objections raised in turn.

### a. The administrative complaint

The City observes that "Plaintiff's counsel expended in excess of 5 hours in connection with the filing of an administrative complaint with the EEOC," which was a two-page document. (Doc. 47 at 5; *see also* Doc. 47-3 at 27-28) According to the City, "An experienced attorney can complete this task relatively easily and therefore, the alleged time spent in pursuit of this action is excessive, unwarranted and demonstrates unnecessary duplication of efforts." (Doc. 47 at 5) Specifically, the City challenges

---

[5] Even if a fee request is unopposed, the Court must review the time billed and assess whether it is reasonable in light of the work performed and the context of the case. *See Common Cause v. Jones*, 235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002); *see also McGrath v. County of Nevada*, 67 F.3d 248, 254 n.5 (9th Cir. 1995) (noting a court may not adopt representations regarding the reasonableness of time expended without independently reviewing the record); *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984) (remanding an action for a thorough inquiry on the fee request where "the district court engaged in the 'regrettable practice' of adopting the findings drafted by the prevailing party wholesale" and explaining a court should not "accept[] uncritically [the] representations concerning the time expended").

[6] In the motion, Plaintiff indicated his attorneys spent a total of 421.56 hours in the action. (Doc. 46 at 3-4) However, in the reply, Plaintiff indicates 30 hours should be deducted due to an error in the number of hours traveled by Mr. Rozynski, which results in a total of 391.56. (Doc. 48 at 11)

the total time expended on the following actions related to the EEOC charge:

| DATE | ATTORNEY | TASK | TIME |
|------|----------|------|------|
| 3/13/2015 | Rozynski | Review EEOC Complaint | 0.40 |
| 4/23/2015 | Rozynski | Review EEOC Docs | 0.10 |
| 5/4/2015 | Rozynski | Prepare client for EEOC | 1.00 |
| 5/4/2015 | Rozynski | EEOC Call | 0.50 |
| 5/19/2015 | Rozynski | Edit EEOC charge | 0.30 |
| 5/26/2015 | Black | Evaluate EEOC charge | 0.20 |
| 5/29/2015 | Black | Edit to EEOC charge | 0.50 |
| 6/3/2015 | Black | Compose Charge letter | 0.90 |
| 6/17/2015 | Agcaoili | Convo with EEOC | 0.17 |
| 6/17/2015 | Agcaoili | Revise EEOC Charge | 0.20 |
| 6/17/2015 | Agcaoili | Email Rozynski re revised Charge | 0.08 |
| 6/29/2015 | Agcaoili | EEOC charge docs | 0.25 |
| 7/27/2015 | Agcaoili | Call to EEOC | 0.08 |
| 8/25/2015 | Agcaoili | Email to EEOC re charge | 0.25 |
| 1/27/2016 | Jaramilla | Review EEOC Complaint | 0.25 |

(Doc. 47-3 at 4)

Mr. Szewczyk asserts that he is "intimately familiar with the process by which complaints are filed with the EEOC and FEHA officers in California having done so in the past and by and through responding to the same." (Doc. 4-3 at 4, Szewczyk Decl. ¶10) He asserts: "experienced attorneys will go into the EEOC/FEHA process with a draft complaint that the agency will then utilize. Compilation of a short and distinct claim is relatively easy to accomplish with a draft complaint when meeting with the EEOC/FEHA officers." (*Id.* at 5, ¶10)

Notably, Defendant's objections as to the time expended on the EEOC charge appears to be based upon the amount of time Mr. Szewczyk believes "experienced attorneys" would spend on the charge. However, Plaintiff's attorneys who worked on the EEOC complaint do not have the same level of experience of Mr. Szewczyk. For example, Mr. Rozynski began working on this action when he had been practicing law for approximately three years, and Mr. Black had been admitted to the Bar for only one year. Thus, it is not unreasonable to expect that additional time was required to prepare the EEOC charge compared to an attorney with significant experience. Regardless, the time expended by counsel to draft the EEOC charge was not excessive. *See, e.g., Jadwin*, 767 F. Supp. 2d at 1116 (awarding 18 hours for tasks related to administrative filings).

### b. Communications between co-counsel

The City asserts that "duplication and unnecessary efforts can be seen in connection with the

16

time expended by counsel for both firms relating to communications between their offices and coordination of events which arose in the prosecution of the case." (Doc. 47 at 5) As the City observes, "Where excessive time is spent by counsel with each other, a court is likely to reduce the time as excessive." (*Id.*, citing *Carr v. Fort Morgan Sch. Dist.*, 4 F. Supp. 2d 999, 1003 (D. Colo. 1998) (holding a 30% reduction was reasonable "to account for the excessive time spent by counsel with their client and each other" and other "time questionably spent"). Thus, the City asserts 13.22 hours it identified as communications between Plaintiff's co-counsel should be deducted from the lodestar calculation as duplicative and excessive. (Doc. 47 at 5; Doc. 47-3 at 5, Szewczyk Decl. ¶11) In reply, Plaintiff's counsel asserts that "thirteen hours of inter-office communications over the span of two years of litigation, part of which included trial preparations, is eminently reasonable under the circumstances." (Doc. 48 at 7, emphasis omitted)

Notably, the Ninth Circuit has "recognized that 'the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort.'" *McGrath v. County of Nevada*, 67 F.3d 248, 256 (1995) (quoting *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989)). However, in general, two attorneys cannot bill for communicating with each other, as such time is duplicative and unnecessary. *In re Mullins*, 84 F.3d 459, 467, 318 U.S. App. D.C. 19 (D.C. Cir. 1996); *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1099 (D. Haw. 2010).

Moreover, as this Court previously observed, "many courts have … reduced fee awards for time spent in 'interoffice conferences' or other internal communications." *Gauchat-Hargis v. Forest River, Inc.*, 2013 WL 4828594 at *3 (E.D. Cal. Sept. 9, 2013) citing, *e.g., Mogck v. Unum Life Ins. Co. of Am.*, 289 F.Supp.2d 1181, 1194 (S.D. Cal. 2003) (reducing the fee award upon finding the attorneys "billed an inordinate amount of time for interoffice conferences"); *Coles v. City of Oakland*, 2007 WL 39304, at *10 (N.D. Cal. Jan. 4, 2007) ("[c]laiming a disproportionate number of hours for communication between attorneys may indicate unreasonable overstaffing such that a reduction in hours is appropriate"); *Gibson v. City of Chicago*, 873 F.Supp.2d 975, 987 (N.D.Ill. 2012) (eliminating time entries for duplicative tasks).

Here, as the City asserts, there are a significant number of billing entries for time spent on

internal communications and conferences among co-counsel, including[7]:

| DATE | ATTORNEY | TASK | TIME |
|---|---|---|---|
| 2/20/2015 | Rozynski | Pre Consultation Meeting with Co-Counsel | 1.00 |
| 2/24/2015 | Rozynski | Correspondence with Co-Counsel | 0.30 |
| 3/4/2015 | Rozynski | Correspondence with Co-Counsel | 0.30 |
| 3/16/2015 | Rozynski | Correspondence with Co-Counsel | 0.10 |
| 3/23/2015 | Rozynski | Correspondence with Co-Counsel | 0.20 |
| 5/6/2015 | Rozynski | Correspondence with Co-Counsel | 0.20 |
| 5/15/2015 | Rozynski | Correspondence with Co-Counsel | 0.20 |
| 5/28/2015 | Rozynski | Correspondence with Co-Counsel | 0.20 |
| 6/1/2015 | Rozynski | Correspondence with Co-Counsel | 0.10 |
| 6/2/2015 | Rozynski | Correspondence with Co-Counsel | 0.20 |
| 6/5/2015 | Rozynski | Correspondence with Co-Counsel | 0.20 |
| 6/17/2015 | Rozynski | Correspondence with Co-Counsel | 0.10 |
| 6/17/2015 | Agcaoili | Email Rozynski re Revised Charge | 0.08 |
| 6/26/2015 | Rozynski | Correspondence with Co-Counsel | 0.20 |
| 8/25/2015 | Rozynski | Correspondence with Co-Counsel | 0.10 |
| 9/3/2015 | Rozynski | Correspondence with Co-Counsel | 0.10 |
| 9/28/2015 | Rozynski | Correspondence with Co-Counsel | 0.10 |
| 10/16/2015 | Rozynski | Correspondence with Co-Counsel | 0.10 |
| 11/6/2015 | Rozynski | Correspondence with Co-Counsel | 0.10 |
| 11/20/2015 | Mallari | Email to co-counsel AR re Complt | 0.08 |
| 11/23/2015 | Rozynski | Correspondence with Co-Counsel | 0.30 |
| 11/24/2015 | Mallari | tcw co-counsel A. Rozynski re case status | 0.17 |
| 12/3/2017 | Mallari | Email to co-counsel AR and PH re draft complaint | 0.08 |
| 12/9/2015 | Mallari | Email to co-counsel E. Baum and A. Rozynski re ph. conf. | 0.08 |
| 12/21/2015 | Mallari | tcw co-counsel A. Rozynski re venue for filing complt | 0.33 |
| 1/11/2016 | Jaramilla | tcw co-counsel | 0.50 |
| 1/14/2016 | Rozynski | Correspondence with Co-Counsel | 0.20 |
| 1/29/2016 | Rozynski | Correspondence with Co-Counsel | 0.10 |
| 2/11/2016 | Mallari | tcw co-counsel AR re magistrate judge | 0.17 |
| 2/12/2016 | Mallari | twc co-counsel AR re magistrate judge (consent to jxn) | 0.17 |
| 2/12/2016 | Mallari | Email to co-counsel AR and EB re magistrate judge | 0.08 |
| 3/11/2016 | Mallari | Rev'd and resp to email from co-counsel PB re scheduling conf. | 0.08 |
| 3/15/2016 | Mallari | tcw co-counsel PB re joint report | 0.08 |
| 3/16/2016 | Black | *Correspondence with co-counsel* and opposing counsel regarding 26(f) report | 0.50 |
| 3/18/2016 | Mallari | Rev'd and revised draft of joint report; *emails with co-counsel PH and AR* | 1.25 |
| 3/22/2016 | Black | Correspondence with co-counsel[] | 0.10 |
| 3/22/2016 | Mallari | twc co-counsel AR and PB Joint Scheduling Conf/Report | 0.08 |
| 3/23/2016 | Mallari | Email to co-counsel PB and AR re Tarango case facts | 0.08 |
| 3/23/2016 | Mallari | Rev'd and resp to email from co-counsel PB re joint scheduling report | 0.08 |
| 3/23/2016 | Mallari | Rev'd and resp to email from co-counsel PB re joint | 0.08 |

---

[7] The City did not identify the specific time entries it challenged as interoffice conferences or communications between co-counsel. Based upon the Court's review of the billing records, it appears the City only addressed the time billed by Eisenberg & Baum. However, the entries from Toni Jaramilla APLC also include a significant number of conferences.

| | | scheduling report | |
|---|---|---|---|
| 3/23/2016 | Mallari | Rev'd and resp to email from co-counsel PB re joint scheduling report | 0.08 |
| 4/20/2016 | Black | Call with May Mallari | 0.20 |
| 5/23/2016 | Black | Edits to discovery requests *and call with cocounsel regarding same* | 1.10 |
| 5/23/2016 | Mallari | twc co-counsel P. Black re discovery requests | 0.17 |
| 6/13/2016 | Mallari | tcw PB re status on discovery/depos. | 0.08 |
| 6/30/2016 | Mallari | Email to co-counsel PB re depositions | 0.08 |
| 7/1/2016 | Mallari | twc co-counsel PB re discovery; depos. | 0.08 |
| 7/7/2016 | Mallari | Email to co-counsel PB re status of depos[.] | 0.08 |
| 7/20/2016 | Mallari | Rev'd and resp to email from co-counsel PB | 0.08 |
| 8/1/2016 | Black | Email to co-counsel re settlement demand | 0.10 |
| 8/2/2016 | Black | Correspondence with co-counsel | 0.10 |
| 8/25/2016 | Black | Correspondence with co-counsel | 0.10 |
| 8/26/2016 | Black | Correspondence with cocounsel re conference scheduled for Monday | 0.10 |
| 9/13/2016 | Mallari | Email to co-counsel re client meeting | 0.08 |
| 9/14/2016 | Mallari | Rev'd and resp to email from co-counsel PB | 0.08 |
| 9/20/2016 | Black | Call with May Mallari | 0.20 |
| 9/20/2016 | Mallari | *tcw PB re case status*; discovery | 0.17 |
| 10/18/2016 | Black | Call with May Mallari | 0.20 |
| 10/18/2016 | Mallari | tcw co-counsel PB re client's discovery responses | 0.25 |
| 10/20/2016 | Mallari | Email to co-counsel re discovery | 0.08 |
| 10/28/2016 | Black | Internal correspondence re Plaintiff's discovery responses | 0.40 |
| 11/1/2016 | Mallari | Rev'd and resp to email from co-counsel PB re discovery | 0.08 |
| 11/2/2016 | Rozynski | Phone Call with Co-Counsel | 0.30 |
| 11/3/2016 | Mallari | Email to co-counsel Sheryl re discovery | 0.08 |
| 11/3/2016 | Mallari | Rev'd and resp to email from co-counsel Sheryl re discovery | 0.08 |
| 11/3/2016 | Mallari | Rev'd and resp to email from co-counsel re discovery | 0.08 |
| 11/3/2016 | Mallari | Rev'd and resp to email from co-counsel Sheryl re discovery | 0.08 |
| 11/28/2016 | Mallari | Rev'd and resp to email from co-counsel PB | 0.08 |
| 11/29/2016 | Mallari | *tcw co-counsel PB re status*; discovery | 0.33 |
| 12/6/2016 | Black | Research *and correspondence with co-counsel re Rule 34 request* | 0.50 |
| 1/30/2017 | Mallari | tcw co-counsel PB re case status | 0.17 |
| 2/2/2017 | Mallari | Rev'd and resp to email from co-counsel PB | 0.08 |
| 2/3/2017 | Black | Reviewing and *internal communications re stipulation to extend discovery and proposed injunctive relief* | 0.50 |
| 2/3/2017 | Mallari | Email to co-counsel PB and AR re stip and settlement proposal on accomodations | 0.08 |
| 2/3/2017 | Mallari | Rev'd and resp to email from co-counsel PB | 0.08 |
| 2/27/2017 | Black | Email with co-counsel re settlement strategy | 0.10 |
| 2/27/2017 | Mallari | Email to co-counsel re damages calculations | 0.08 |
| 2/27/2017 | Black | *Meeting with Andrew R* and editing proposed policy changes list | 0.50 |
| 2/27/2017 | Mallari | tcw co-counsel PB and AR and TJJ re settlement | 0.50 |
| 2/27/2017 | Jaramilla | Phone conference with co-counsel re strategy | 0.40 |
| 2/28/2017 | Mallari | Email to co-counsel re damages calculations | 0.08 |

| | | | | |
|---|---|---|---|---|
| 3/2/2017 | Mallari | Email to co-counsel re mediators | 0.08 |
| 3/2/2017 | Mallari | Rev'd and resp to email from co-counsel re mediators | 0.08 |
| 3/6/2017 | Mallari | Email to co-counsel re mediation dates | 0.08 |
| 3/13/2017 | Mallari | Email to co-counsel re me | 0.08 |
| 3/17/2017 | Mallari | Rev'd and resp to email from co-counsel PB re mediation | 0.08 |
| 4/10/2017 | Rozynski | Call with Co-Counsel | 0.50 |
| 4/26/2017 | Black | Deadlines discussion with Greg A. | 0.10 |
| 5/10/2017 | Black | Call with John S. re settlement; *discussion of proposal with Andrew R and Eric B.* | 0.40 |
| 5/22/2017 | Black | Call with opposing counsel *and internal discussion re: settlement offer* | 0.30 |
| 5/25/2017 | Black | Call with John S. *and discussion with Andrew R re same* | 0.20 |
| 6/15/2017 | Mallari | Email to co-counsel PB re preparing Jt. Pretrial Statement | 0.08 |
| 6/19/2017 | Mallari | Email to co-counsel PB re Jt. Pretrial Statement | 0.08 |
| 6/19/2017 | Mallari | Rev'd and resp to email from co-counsel PB re Jt. Pretrial Statement | 0.08 |
| 6/22/2017 | Mallari | Email to team re Jt. Pretrial Statement | 0.17 |
| 6/26/2017 | Mallari | Rev'd and resp to co-counsel PB re Pretrial Statement | 0.08 |
| 6/26/2017 | Mallari | Email to co-counsel PB re pre-trial docs | 0.08 |
| 7/6/2017 | Black | Email to co-counsel re: pretrial conference appearance | 0.10 |
| 7/7/2017 | Jaramilla | Discuss trial strategies with co-counsel | 0.75 |
| 7/7/2017 | Black | Conversations with AR, LW, and BS re: pretrial conference and case strategy | 1.80 |
| 7/10/2017 | Black | Phone call with Andrew R. | 0.40 |
| 7/11/2017 | Black | Discussions with Andrew R. | 0.60 |
| 7/14/2017 | Black | Call with Andrew R regarding case strategy | 0.20 |
| 7/18/2017 | Shrader | Discussed pre-trial concerns with Lea Wiederhorn and Phil including exhibit list and objects, jury instructions, verdict sheets, and trial strategies | 0.90 |
| 7/18/2017 | Mallari | Email to co-counsel PB re pre-trial docs | 0.08 |
| 7/18/2017 | Black | Meeting with LW and BS re jury instructions and other pretrial preparation | 0.90 |
| 7/20/2017 | Jaramilla | Discussion with co-counsel re: strategy | 2.00 |
| 7/20/2017 | Black | Discussion of trial strategy with LW | 0.50 |
| 7/21/2017 | Jaramilla | Discussion with co-counsel regarding trial strategy, settlement, lineup of witnesses, and other pre-trial motions and matters | 1.00 |
| 7/26/2017 | Black | *Collaboration with LW* and edits to stipulations | 1.50 |
| 8/1/2017 | Mallari | Email to co-counsel PB and AR | 0.08 |
| 8/2/2017 | Mallari | Email to co-counsel AR and PB re stipulation re settlement | 0.08 |
| 8/31/2017 | Black | Review of settlement agreement, new version, *and email to co-counsel re: same* | 0.30 |

(Doc. 46-2; Doc. 46-6 [emphasis added])  Thus, there are 30.94 hours of billed time that include entries

related to interoffice conferences and communications.[8]  Based upon the review of the record, the Court finds the time expended should be reduced by 5.2 hours for Andrew Rozynski, 8.26 hours for Philip Black, 0.9 hours for Brittany Shrader, 0.08 hours for Francis Agcaoili, 5.81 hours for May Mallari, and 4.65 hours for Toni Jaramilla.[9]

### c.  Drafting of the complaint

The City asserts the time expended "drafting the Complaint … also reflects unnecessary and duplicative efforts" and "excessive billing practices."  (Doc. 47 at 6)  According to the City, because Plaintiff's counsel "spent approximately 9.6 hours interviewing Plaintiff and gathering the facts of this matter prior to filing the EEOC Complaint, and another 5 hours in the EEOC process," they "should have been readily familiar with the relevant facts."  (*Id.*)  The City contends this familiarity should have "substantially decreas[ed] the amount of time spent working on the Complaint."  (*Id.*)

The City also argues the time is excessive because "Plaintiff's counsel is using a form complaint for these types of cases."  (Doc. 47 at 6)  In support of this assertion, the City points to the complaint in *Laura Roberts v. Starbucks Coffee Company*, Case No. 2:15-cv-02607-NVW, which the City asserts "showcases nearly identical charging allegations and claims" and was "filed by Andrew Rozynski and the Eisenberg Firm as Pro Hac Vice in the United States District Court for the District of Arizona."[10]  (*Id.*, citing Szewczyk Decl., Exh. B [Doc. 47-3 at 30-59])  The City acknowledges that the "factual allegations are different," but asserts "it is manifestly clear that such factual circumstances would not consume the time amounts allegedly expended in the drafting of the instant Complaint, especially since Plaintiff's counsel had spent such a large of time interviewing Plaintiff and gathering facts prior to commencing work on the Complaint."  (*Id.*)

Notably, the complaint in *Roberts* was not signed by an attorney from Eisenberg & Baum LLP,

---

[8] Notably, additional billing entries strongly suggest the e-mails sent by counsel were interoffice communications. (*See, e.g.,* Doc. 46-2 at 13)  However, the Court will not disturb the hours reported related to communications where the recipient of an email is not clearly identified as co-counsel.

[9] For entries where the only task listed was a conference, the entirety of the time was deducted.  For the entries including both interoffice communications and other tasks, the Court reduced the time reported by twenty percent.  *See Dubose v. Cnty. of L.A.,* WL 2135293, at *5 (C.D. Cal. June 11, 2012) (reducing billings by 20 percent due in part to vague time entries and excessive entries for communications between counsel); *see also Lahiri v. Universal Music & Video Distrib. Corp.,* 606 F.3d 1216, 1222-23 (9th Cir. 2010) (upholding 30 percent reduction of 80 percent of billable hours to account for block-billing).

[10] The City does not request that the Court take judicial notice of the complaint.  Nevertheless, judicial notice may be taken of undisputed matters of public record, including documents on file in federal or state courts.  *See Harris v. County of Orange,* 682 F.3d 1126, 1131-32 (2012).  Although the Court declines to take judicial notice of the *facts* presented in the complaint, judicial notice is taken of the claims and the manner in which the allegations were presented.

21

but rather was signed by Sarah Weimer from the Arizona Center for Disability Law. (Doc. 47-3 at 58) In addition, the *Roberts* complaint includes significant differences to the complaint filed by Plaintiff's counsel in this action. For example, *Roberts* raised only claims arising under federal law, while the instant action includes claims arising under California law. (*Compare* Doc. 1 at 2, ¶ 2 *with* Doc. 47-3 at 31-32, ¶¶ 1-2) Further the factual allegations in each complaint are specific to each plaintiff and the alleged violations suffered in their workplaces. (*See generally* Doc. 1, Doc. 47-3 at 30-59) Finally, the difference in page length strongly suggests counsel did not use a form complaint, as the pleading in this action was fourteen pages, while the complaint in *Roberts* was nearly 30 pages. (*Id.*) Accordingly, the Court is not persuaded a form complaint was used, and hours will not be reduced on these grounds.

Moreover, the Court's review of the billing records submitted by Plaintiff does not reveal an excessive amount of time spent by counsel on drafting or revising the complaint. Rather, the time expended by counsel appears reasonable, and no deductions are warranted.

### d. Venue and local court issues

The City argues that "the time expended by Plaintiff's counsel on venue and local court issues [was] excessive," and this was due to "the lack of local experience on the part of counsel chosen by Plaintiff." (Doc. 47 at 7, emphasis omitted) The City observes Plaintiff's counsel spent "a full four (4) hours of time on calls with local attorneys (to wit, Emilio Huerta, Randy Rumph and Paul LaFranchise) with regard to venue issues and local court rules, along with duplicative additional discussions between co-counsel on the same or similar issues." (*Id.*) Specifically, the time the City challenges as "unwarranted" includes 3.89 hours on the following tasks:

| DATE | ATTORNEY | TASK | TIME |
|------|----------|------|------|
| 12/7/2015 | Mallari | tcw Emilio Huerta (CELA member) re Bakersfield venue | 0.50 |
| 12/9/2015 | Mallari | tcw Randy Rumph (CELA member) re Bakersfield venue | 0.42 |
| 12/9/2015 | Mallari | Email to co-counsel E. Baum and A. Rozynski re ph. Conf. | 0.08 |
| 12/9/2015 | Mallari | tcw Paul LaFranchise (CELA member) re Bakersfield venue | 0.33 |
| 12/21/2015 | Mallari | tcw co-counsel A. Rozynski re venue for filing complt. | 0.33 |
| 1/11/2016 | Black | Discussion regarding federal vs state venue | 0.90 |
| 1/21/2016 | Rozynski | Research on Local Rules CAED | 0.50 |
| 2/11/2016 | Mallari | tcw co-counsel AR re magistrate judge | 0.17 |
| 2/11/2016 | Mallari | Email to CELA member R. Rumph | 0.08 |

| 2/11/2016 | Mallari | tcw CELA member Randy Rumph re federal venue | 0.58 |
|-----------|---------|--------------------------------------------|------|

(Doc. 47-3 at 6-7; Doc. 46-2 at 5; Doc. 46-6 at 2)  In response, Plaintiff asserts, "a few hours' time spent coordinating efforts between attorneys, ensuring familiarity with local rules and procedures, and other procedural strategy discussions were warranted so that this case would proceed smoothly (which it did, without any dispute ever requiring the Court's attention)."  (Doc. 48 at 7, citation omitted)

Above, the Court deducted 0.58 for the communications that occurred among co-counsel regarding venue, which leaves 3.31 hours related to venue and the local rules.  This remaining time, including consulting with other attorneys who have local experience, does not appear excessive.[11]

### e.      *Pro hac vice* motions

The City contends, "Any and all charges and discussions relating to Pro Hac Vice Motions should be eliminated as unnecessary since Plaintiff could have used local counsel."  (Doc. 47 at 7)  Therefore, the City argues "an entry in the amount of .50 hours by attorney Andrew Rozynski of the Eisenberg Firm ...should be struck."[12]  (*Id.*)

In general, "whether to award attorney's fees for a *pro hac vice* motion" is a matter committed to the Court's discretion.  *See Access 4 All, Inc. v. 135 W. Sunrise Realty Corp.*, 2008 WL 4453221, *11 (E.D.N.Y. Sept. 30, 2008).  However, district courts in the Ninth Circuit do not often award attorney's fees—or costs—associated with *pro hac vice* admission.  *See, e.g., Raduga U.S.A. Corp. v. United States Dep't of State*, 2006 WL 1305216 at *5 (S.D. Cal. Feb. 17, 2006) (holding the court "will not award fees for time spent pursuing pro hac vice admittance" where there was "no reason why someone local could not have handled the case"); *Truuth v. Spearmint Rhino Cos. Worldwide*, 2012 WL 12893448 (C.D. Cal. Nov. 7, 2012) (reducing the fee award for time expended on the preparation of pro hac vice applications).  Accordingly, the Court will reduce the fee award for Mr. Rozynski by 0.5 hours for the time reported on his pro hac vice application.

---

[11] Consultation with several local attorneys who are members of California Employment Lawyers Association supports the conclusion that local counsel had the ability to prosecute the discrimination and employment claims raised by Plaintiff in this action.

[12] The City also asserts "additional non- described communications which seemingly reference [pro hac vice applications] around the same time period" should be stricken.  Because the Court addressed the communications among co-counsel above, the analysis here is focused on the time reported for completing the application.

### f.    The joint scheduling report

The City objects to the amount of time expended by Plaintiff's counsel in preparation of the joint scheduling report.  (Doc. 47 at 8)  According to the City, the billing records "show duplicative and unnecessary efforts by the four (4) attorneys working on the matter."  (*Id.*, emphasis omitted) Therefore, the City challenges the following time entries:

| DATE | ATTORNEY | TASK | TIME |
|---|---|---|---|
| 3/7/2016 | Jaramilla | Rev'd draft of Joint Scheduling Rpt | 0.50 |
| 3/11/2016 | Mallari | Rev'd and resp to email from co-counsel PB re scheduling conf. | 0.08 |
| 3/16/2016 | Black | Correspondence with co-counsel and opposing counsel regarding 26(f) report | 0.50 |
| 3/18/2016 | Mallari | Rev'd and revised draft of joint report; emails with co-counsel PH and AR | 1.25 |
| 3/18/2016 | Black | Scheduling 26(f) report | 1.10 |
| 3/18/2016 | Rozynski | 26(f) Report | 0.20 |
| 3/18/2016 | Rozynski | Joint Scheduling Order | 0.30 |
| 3/22/2016 | Mallari | tcw co-counsel AR and PB re Joint Scheduling Conf/Report | 0.08 |
| 3/23/2016 | Mallari | Rev'd and resp to email from co-counse[l] PB re joint scheduling report | 0.08 |
| 3/23/2016 | Mallari | Rev'd and resp to email from co-counsel PB re joint scheduling report | 0.08 |
| 3/23/2016 | Mallari | Rev'd and resp to email from co-counsel PB re joint scheduling report | 0.08 |
| 3/23/2016 | Black | 26(f) report correspondence and edits | 1.30 |
| 3/25/2016 | Rozynski | Finalize Joint Scheduling Report | 0.20 |
| 3/25/2016 | Black | Filing joint scheduling report | 0.40 |

(Doc. 47-3 at 8; Doc. 42 at 6; Doc. 46-6 at 3, 9)  Thus, the City identifies billing entries totaling 6.15 hours related to the joint scheduling report, and argues a review of the document "reveals nothing that should have necessitated such large amount of time spent on it."  (Doc. 47 at 8)

Notably, above, the Court deducted 0.75 for communications that occurred among co-counsel regarding the joint scheduling report.  In addition, the Court will deduct 0.40 hours for the filing of the document by Mr. Black, as filing is a purely clerical task that should be excluded from the lodestar calculation.  *See Nadarajah*, 569 F.3d at 921; *see also Harris v. L & L Wings, Inc.*, 132 F.3d 978, 985 (4th Cir. 1997) (approving the court's elimination of hours spent on clerical tasks from the lodestar calculation); *Jones v. Metropolitan Life Ins. Co.*, 845 F. Supp. 2d 1016, 1027 (N.D. Cal. 2012) (discounting time for "filing or retrieving electronic court documents or copying").

With the above deductions, 5.0 hours remain for the preparation of the joint scheduling report.

Although this amount of time is much greater than the amount Mr. Szewczyk reports he spent on the City's portion of the document (Doc. 47-3 at 8, ¶ 16), the Court does not find this amount to be unreasonable. Therefore, the Court will not further reduce the lodestar for the preparation of the joint scheduling report.

### g.    Initial disclosures

The City asserts the 3.75 hours expended by Plaintiff's counsel on the initial disclosures were "unnecessary and excessive." (Doc. 47 at 6, emphasis omitted) According to the City, "A review of these documents reveals that it contains a list of witnesses with the same rote description of what information they may have relative to the case; a paragraph of the damages claimed, and a note re lack of insurance." (*Id.*) In addition, the City contends: "The time entries for these documents reveal that multiple attorneys worked on this document even though the bulk of the work was done early in the process." (*Id.*)

On the other hand, as the City acknowledges, Plaintiff's initial disclosures totaled thirty pages. (*See* Doc. 47-3 at 9, Szewczyk Decl. ¶ 17, Doc. 47-3 at 61-98) The disclosures included list of 22 witnesses as well as exhibits, such as the EEOC documents, emails, memos, and a job description. (*See id.* at 61-68) The 3.75 hours to compile the information and exhibits were not excessive, and the Court declines to reduce the fee award for preparation of the initial disclosures.

### h.    Discovery

The City "served written discovery on Plaintiff consisting of Request for Admissions, Special Interrogatories, and Request for Production of Documents." (Doc. 47 at 8) According to Defendant, the 42 hours expended on discovery was "unnecessary and excessive" because "[a] review of the discovery requests and Plaintiff's counsel's objections reveal a complete lack of effort in responding to the discovery." (*Id.*, emphasis omitted)

In reply, Plaintiff asserts that "[t]he time spent on these items was justified." (Doc. 49 at 8) Plaintiff contends: Defendant's written discovery requests included 53 requests for production, 23 interrogatories, and 72 requests for admission. (*Id.*) Plaintiff argues that "Defendant is being somewhat hypocritical in blaming [counsel] for spending many hours responding to such a large, duplicative, and unnecessary number of requests." (*Id.*)

Notably, nearly 16 hours expended by counsel related to discovery involved communications with Plaintiff, whether via video conference or email. (*See* Doc. 46-2 at 9-11; Doc. 46-6 at 4-6)  In addition, the Court deducted 1.06 hours for the internal communications that occurred among co-counsel related to discovery.  The Court does not find the 25 hours expended to review documents provided by Plaintiff or prepare the written responses to discovery were excessive in light of the number of requests served by the City.  Consequently, no additional deductions will be made to the lodestar for the hours counsel expended on discovery.

### i. Depositions

According to the City, "the billing entries submitted by Plaintiff for depositions conducted in this matter contain multiple irregularities." (Doc. 47 at 9)  Mr. Szewczyk reports that he was present for each deposition, and "[t]he deposition of Mr. Miguel Raya ran from 9:00 a.m. to 11:40 a.m., with one break." (*Id.*)  Defendant contends "the entire time spent on the deposition was 2.70 hours and not 2.90 hours as billed by Plaintiff's counsel." (*Id.*, emphasis omitted)  In addition, the City reports: "The deposition of Plaintiff ran from 9:55 a.m. to 4:06 p.m.  Factoring in the lunch period, the time spent for the deposition was only 5.4 hours, yet the charge for the deposition is 8 hours." (*Id.*, citations omitted)  The City also questions the 2.0 hours billed by Mr. Rozynski for deposition preparation the same day as Plaintiff was deposed because "he did not participate in the deposition" (*id.*) and "did not ask questions during the deposition of his own client." (Doc. 47-3 at 12, ¶ 20)  Further, the City contends counsel engaged in "double billing" as Mr. Black billed 4.9 hours for deposition preparation the same date as he traveled 11.10 hours.  (Doc. 47 at 9)

In response, Plaintiff argues that "Defendant's disputes on this topic are speculative and unwarranted," and there are no errors related to the billing entries identified by the City.  (Doc. 48 at 8)  Specifically, Plaintiff asserts:

> As to Mr. Black, there is no irregularity with preparing to take two depositions on the same day of travel, after and *in addition* to the travel time itself. Thus, these hours are not "double billed," and there are no indications to the contrary. ECF Doc. 46-2, at 8. Plaintiff's recorded attorney hours for the depositions are also correct. The small 0.2 hour (i.e. 12 minute) discrepancy between the parties on the duration of the deposition of Mr. Raya is readily explained by the time it took Mr. Black to travel to and from Mr. Szewczyk's office from his hotel. *See* ECF Doc. 46-3 at 23-25.  Similarly, the deposition of the Plaintiff was noticed for 9:30am, and lasted from 9:55am to 4:06pm. *See* Rozynski Reply Declaration. Mr. Rozynski arrived early and stayed for a period of time afterwards to converse with Mr. Tarango.  *See id*.  He then included travel time

26

> back to Los Angeles in his figure for the deposition. *See id.* This explains the discrepancy between Defendant's 5.4 recorded hours for the deposition versus Plaintiff's 8 recorded hours, as the entire deposition process from start to finish lasted longer for Plaintiff than Defendant (which is not unusual or unexpected).

(Doc. 48 at 8, emphasis in original)

Notably, it is possible for an attorney to travel and prepare for a deposition on the same day, and in doing so work for fifteen hours. *See In re New Boston Coke Corp., 299 B.R. 432*, 448 (E.D. Mich. 2003) ("it is certainly possible that an attorney could bill ten-, nineteen- or twenty-hour days") Because he is an officer of the Court, the Court will not question Mr. Black's records related to both traveling and preparing for depositions on the same date. In addition, although Mr. Rozynski did not question Plaintiff during his deposition, it was not unreasonable for Mr. Rozynski to prepare for the deposition of his client. Finally, Plaintiff has provided adequate explanations for the differences in the billing records for the duration of depositions compared to the times identified by Mr. Szewczyk. Thus, the Court finds the hours billed by Plaintiff's counsel related to the depositions were not excessive or unreasonable.

### j. Expert's report

Plaintiff's counsel hired an expert to evaluate Plaintiffs ability to communicate. (Doc. 47 at 9) The City contends the time expended related to the expert "should be stricken," including:

| DATE | WORKER | TASK | TIME |
|------|--------|------|------|
| 11/13/2016 | Eisenberg-Michalhowski | Expert Witness- Judy Shepard Kegl[] Documents for Discovery- deposition | 2.00 |
| 12/9/2016 | Eisenberg-Michalhowski | Judy Kegl Shepard – Schedule 12/17 | 1.00 |
| 3/1/2017 | Acampora | Reviewing Expert Report Documents | 0.10 |
| 3/1/2017 | Rozynski | Correspondence with Expert | 0.50 |
| 3/8/2017 | Eisenberg-Michalhowski | Judy Shepard Kegl- essays Status of case | 1.00 |
| 3/28/2017 | Black | Reviewing expert report and sending to Dr. Kegl | 1.00 |
| 3/28/2017 | Acampora | Draft expert report letter | 0.50 |
| 3/31/2017 | Acampora | Prepare Expert Report documents and videos | 1.20 |
| 4/5/2017 | Acampora | Reviewing, scanning and filing expert disclosures | 0.30 |

(Doc. 47 at 9; Doc. 47-3 at 13; Doc. 46-2 at 11-14) The City notes that "some of the entries consisted of scanning and filing, which are manifestly clerical work and not legal work," and "should be stricken." (Doc. 47 at 9) The City also asserts, "some of the work attributed to the expert may have

actually been prepared by Plaintiff's attorneys, which raises significant issues as to the impartiality of the expert and what exactly was done by the expert." (*Id.*)

On the other hand, as Plaintiff observes, "attorneys are entitled … to communicate with the expert about the expert's compensation, the scope of the report, and the assumptions to be considered." (Doc. 48 at 9, citing Fed. R. Civ. P. 26(b)(4)(C))  The Court declines to speculate as to the nature of the communications between the expert and counsel, and will not reduce the time reported for reviewing the expert's documents or corresponding with the expert.  However, the work is clerical—as Plaintiff admits (*see id.*) — including reviewing, scanning, and filing documents for the expert report is not compensable.  *See Nadarajah*, 569 F.3d at 921 (work that is "clerical in nature … should [be] subsumed in firm overhead rather than billed" and is therefore not recoverable); *In re Mohsen*, 473 B.R. 779, 795 (N.D. Cal. 2012) (explaining organizing documents and filing were "non-compensable clerical tasks").  Therefore, Plaintiff is not entitled to recover fees for the 0.30 hours of clerical work performed by Mr. Acampora.

### k.       Pre-trial preparation

The City objects to the amount of time expended by Plaintiff's counsel on pre-trial preparation, including drafting the joint pre-trial conference statement, motions in limine, and jury instructions. (Doc. 47 at 9-11)  The City observes that counsel spent approximately 24 hours preparing the pre-trial statement, 10 hours preparing a motion in limine, and 38 hours "in preparation and revision to jury instructions." (*Id.*)  Further, the City notes:  "Some of the entries refer to clerical tasks, e.g., creating lists, scanning documents, converting documents, and bate stamping documents which had already been bate stamped when produced.  These charges are unnecessary and not 'legal work.'" (*Id.* at 11)

Notably, the amount of time Defendant believes to be necessary to prepare for trial is clearly framed by the thirty-four years of experience that Mr. Szewczyk has in the practice of law.  (*See* Doc. 47- 3 at 20, ¶ 26)  Mr. Black has been admitted to practice for approximately three years in New York and less than one year in the state of California.  Given the fact he has less experience, spending more time on trial preparation—such as the 15 hours Mr. Black spent to research and draft the pre-trial statement— is not unreasonable.  Likewise, though senior attorneys reviewed work of junior attorneys, a review of the billing records does not clearly indicate unnecessary work on the pre-trial documents.

On the other hand, as the City observes, many entries related to pre-trial preparation include exhibits extraction, Bates stamping documents, scanning Plaintiff's exhibits, and drafting an index—with each task completed by Dina Valmon. (Doc. 46-2 at 16-17) Given the clerical nature of these tasks, as noted above, the Court will deduct the 10.10 hours worked by Ms. Valmon from the lodestar calculation. *See Nadarajah*, 569 F.3d at 921.

### l.    Mediation

Ms. Jaramilla and Mr. Rozynski both represented Plaintiff at the mediation session in April 2017, with one attorney appearing in person in Bakersfield and the other attorney appearing via a video conference. (Doc. 47 at 10; Doc. 47-3 at 20, Szewczyk Decl. ¶25) According to the City, "Given the simplistic nature of the mediation conducted (the bulk consisted of minor tweaks to the accommodation language the parties had already agreed upon), it is clear that only one attorney was necessary to conduct the mediation." (*Id.*) Therefore, the City argues "only one attorney's time should be allowed" for participation in the mediation. (*Id.*)

Significantly, the Ninth Circuit determined "the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort." *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989) (citing *Probe v. State Teachers' Retirement System*, 780 F.2d 776, 785 (9th Cir. 1986)). Because mediation offers "best opportunity for an early resolution of the matter," it is not unreasonable for two attorneys to attend a mediation session. *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 971 (N.D. Cal. 2014); *King v. Cigna Corp.*, 2007 U.S. Dist. LEXIS 9464 at *18 (N.D. Cal. Dec. 13, 2007) (finding "it was not unreasonable for [the plaintiff] to enlist the services of two attorneys with different backgrounds and perspectives" to attend a mediation session); *Lauderdale v. City of Long Beach*, 2010 U.S. Dist. LEXIS 146002 at *26-27 (C.D. Cal. Jan. 11, 2010) (holding that "participation of more than one attorney at a mediation does not automatically constitute an unnecessary duplication of effort," and awarding time for the two attorneys present where "the mediation sat at the very crossroads of the resolution  of this case").

In this case, as in *King,* the two attorneys have different backgrounds and perspectives, with Ms. Jaramilla having more than twenty years of experience in the practice of law and Mr. Rozynski having five years of experience. (*See* Doc. 46-5 at 2, ¶2; Doc. 46-1 at 3, ¶6) Further, Mr. Jaramilla

has extensive experience with employment law, while Mr. Rozynski has experience with "disability discrimination cases." (Doc. 46-5 at 2, ¶ 2; Doc. 46-1 at 2, ¶5) Thus, it was not unreasonable for both Ms. Jaramilla and Mr. Rozynski to participate in the session. *See King*, 2007 U.S. Dist. LEXIS 9464 at *18; *see also Banas*, 47 F. Supp. 3d at 971 (finding it was not unreasonable for "two senior attorneys" to attend mediation); *Kim*, 871 F.2d at 1435 n.9.

m.      Court settlement conference

The City asserts the 8.0 hours billed by Mr. Rozynski for the settlement conference with the Court were excessive, because "the total time only took 4.5 hours." (Doc. 47 at 11, citing Doc. 47-3 at 20, Szewczyk Decl. ¶25) On the other hand, Plaintiff asserts the "recorded attorney time for the settlement conference is correct," and that the "conference lasted from 11:00am until 4:30pm." (Doc. 48 at 9, Doc. 48-1 at 2, Rozynski Supp. Decl. ¶5) Mr. Roznyski reports that he "arrived at 10:00am to prepare with Plaintiff and stayed for 45 minutes afterward to converse further with Plaintiff about the case; and … traveled 20 minutes each way." (Doc. 48-1 at 2, ¶5)

Notably, the Court records indicate the settlement conference with Judge Seng lasted for 5.0 hours—not 4.5 hours as reported by the City or the 5.5 hours reported by Plaintiff. Accordingly, the time awarded to Mr. Rozynski related to the settlement conference will be reduced to 7.42 hours, which includes 5.0 hours for the conference, 1.0 hours to prepare with Plaintiff, 0.75 hours to discuss the conference with Plaintiff, and 0.67 hours for travel.

3.      Lodestar Calculation

With the hourly rates and time adjustments set forth above, the lodestar for the time expended in this action is $**94,621.25**:

| LAW FIRM | LEGAL PROFESSIONAL | ADJUSTED HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| **Eisenberg & Baum/ Law Center for Deaf and Hard of Hearing** | Andrew Rozynski | 115.02 | $250 | $28,755.00 |
| | Phillip Black | 103.94 | $200 | $20,788.00 |
| | Leah Weiderhorn | 19.82 | $300 | $5,946.00 |
| | Brittany Shrader | 1.90 | $275 | $522.50 |
| | Sheryl Eisenberg-Michalowski | 10.00 | $115 | $1,150.00 |
| | Barbara Friedman | 0.75 | $155 | $116.25 |
| | Greg Acampora | 10.10 | $115 | $1,161.50 |
| | Dina Valmon | 0 | n/a | 0 |
| | | | | |

| Toni Jaramilla, APLC | Toni Jaramilla | 55.85 | $400 | $22,340.00 |
|---|---|---|---|---|
| | May Mallari | 34.96 | $375 | $13,110.00 |
| | Francis Agaoili | 2.44 | $300 | $732.00 |
| **TOTAL** | | | | **$94,621.25** |

4.     Adjustment of the lodestar

There is a strong presumption that the lodestar is a reasonable fee.  *Gonzalez*, 729 F.3d at 1202; *Camacho*, 523 F.3d at 978.  However, the Court may adjust a lodestar upward or downward using a "multiplier" in "rare and exceptional cases, supported by both specific evidence on the record and detailed findings … that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen v. Guar. Mut. Life Co*., 214 F.3d 1041, 1045 (9th Cir. 2000) (internal quotation marks omitted).  Here, Plaintiff contends the Court should award the full amount requested of $194,218.50 in light of the results obtained by counsel in this action (Doc. 46 at 8; Doc. 48 at 2, 11), which would result in a multiplier of approximately 2.05 from the lodestar amount of $94,621.25.

The Ninth Circuit has identified the following factors to determine the reasonableness of a fee request, and whether a departure from the lodestar is warranted with a multiplier:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).  However, the Court has since questioned whether the fixed or continent nature of a fee and the "desirability" of a case are relevant factors.  *Resurrection Bay Conservation Alliance v. City of Seward*, 640 F.3d 1087, 1095, n.5 (9th Cir. 2011) (citing *Davis v. City of San Francisco*, 976 F.2d 1536, 1546 n.4 (9th Cir. 1992)).  In addition, many of these factors have been "subsumed in the lodestar determination," and "may not act as independent bases for adjustments of the lodestar."[13] *Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1988).

---

[13] The factors subsumed in the court's lodestar analysis include: "(1) the novelty of the issues, (2) the skill and experience of counsel, (3) the quality of representation, (4) the results obtained, and (5) the contingent nature of the fee agreement." *Eiden v. Thrifty Payless, Inc.*, 407 F. Supp. 2d 1165, 1172 (E.D. Cal. 2005)

Significantly, although Plaintiff contends the results obtained in this action favor an award of the total amount of fees requested, this factor is one "subsumed in the lodestar analysis." *Eiden v. Thrifty Payless, Inc.*, 407 F. Supp. 2d 1165, 1172 (E.D. Cal. 2005) (citing *Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996)). The Ninth Circuit explained:

> [I]n ordinary cases, a plaintiff's "degree of success" or the "results obtained" should be adequately accounted for in the lodestar. Only in rare or exceptional cases will an attorney's reasonable expenditure of time on a case not be commensurate with the fees to which he is entitled. Adjustments to the lodestar based on "results obtained" must be supported by evidence in the record demonstrating why such a deviation from the lodestar is appropriate.

*Cunningham*, 879 F.2d at 488 (9th Cir. 1988). Thus, the Ninth Circuit explained that "the favored procedure is for the district court to consider the extent of the plaintiff's success in making its initial determination of hours reasonably expended at a reasonable rate, and not in subsequent adjustments to the lodestar figure." *Gates*, 987 F.2d at 1404.

The record does not support a conclusion that the results obtained were rare or exceptional, warranting the application of a multiplier. While Plaintiff obtained the relief requested, he did not face significant challenges in the litigation, such that an upward departure of the lodestar is warranted. *See Chalmers v. Los Angeles*, 796 F.2d 1205, 1212-13 (9th Cir. 1986). In addition, there were not time limitations imposed in the litigation, the length of the professional relationship between counsel and Plaintiff was not extensive, and the action does not appear "undesirable." Further, there is no evidence that counsel was precluded from other employment while working on this litigation, given the limited number of hours required from each attorney over the course of the litigation. Likewise, there is no evidence that the fee award is not commensurate with other cases in this forum. Because the *Kerr* factors weigh against the application of a multiplier in this action, the lodestar amount of $94,621.25 will be awarded to Plaintiff.

## C. Award of Costs

Plaintiff seeks an award of costs in the amount of $13,409.75 under the ADA, Rehabilitation Act, FEHA, and Fed. R. Civ. P 54(d)(1). (Doc. 46 at 9-10) Federal law authorizes an award of costs under both the ADA and Rehabilitation Act to prevailing parties in an action. 42 U.S.C.A. § 12205; 29 U.S.C.S. 794a(b). Likewise, California law provides that a prevailing party may recover costs under

FEHA.  *See* Cal Gov't Code § 12965.

Defendant does not dispute that Plaintiff is entitled to an award of costs as a prevailing party, but objects to an award of costs related to counsel's pro hac vice applications and travel.  (Doc. 47 at 7, 14-15)

### 1.    Pro hac vice applications

The City argues Plaintiff is not entitled to receive costs for obtaining certificates in good standing and filing of pro hac vice motions for Mr. Roznyski and Eric Baum.  (Doc. 47 at 7; *see also* Doc. 46-3 at 1)  According to the City, "These charges are made even more suspect in that Mr. Baum never made an appearance in the action nor did any work on the case based upon the entries submitted to Court. "  (*Id.*)  Therefore, the City contends these costs should not be awarded.

In reply, Plaintiff replies that "[t]he *pro hac vice* motions, of course, were necessary for Plaintiff's out-of-state attorneys to appear on the matter, and costs for them should be allowed."  (Doc. 47 at 7, citing *Moore*, 2017 U.S. Dist. LEXIS 40722 at *17; *Archer v. Gipson*, 2015 U.S. Dist. LEXIS 172270 at *46 (E.D. Cal. Dec. 28, 2015).  In addition, Plaintiff contends Mr. Baum "did spend nearly three hours consulting on this case at various points (hours which Plaintiff does not claim in this application)."  (*Id.*, citing Doc. 48-2, Baum Decl.)

Significantly, however, Rule 54 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920 do not specifically authorize *pro hac vice* fees as taxable costs.  This Court has determined "pro hac vice fees are not recoverable as costs."  *Kreidler v. Mainstay Bus. Solutions*, 2012 U.S. Dist. LEXIS 93905 at *3 (E.D. Cal. July 6, 2012); *Duhn Oil Tool, Inc. v. Cameron Int'l Corp.*, 2012 U.S. Dist. LEXIS 134199 at *10 (E.D. Cal. Sept. 19, 2012) (declining to award pro hac vice fees as costs).  Indeed, neither case cited by Plaintiff from this Court awards costs for *pro hac vice* applications.  In *Moore*, the Court discussed the propriety of postage, deposition costs, courier fees, and electronic research begin awarded as litigation expenses.  *Moore*, 2017 U.S. Dist. LEXIS 40722 at *17-21.  Likewise, in *Archer*, the Court considered a request for expenses including sending courtesy copies and "various administrative costs…including witness fees and mileage for appearances at trial, office supplies such as trial binders, process service fees for subpoenas and witness fees, [and] costs related to deposition and city council meeting transcripts."  *Id.*, 2015 U.S. Dist. LEXIS 172270 at *46-47.

Fees related to pro hac vice applications are akin to fees for admittance to a state or federal bar, which an attorney would not expect either a client or losing party to pay. As the Court previously explained, pro hac vice applications "are an expense that an attorney pays for the privilege of practicing law in this court, and [a] defendant should not be responsible for paying these fees simply because [a] plaintiff chose to be represented by counsel who are not admitted to practice in this district." *Kreidler*, 2012 U.S. Dist. LEXIS 93905 at *3. Accordingly, the Court will not award the $436.00 related to obtaining certificates of good standing and the applications to proceed pro hac vice for Mr. Rozynski and Mr. Baum.

### 2. Travel costs

The City argues Plaintiff "should not be allowed to recover the cost for his attorney's travel when [he] could have hired local counsel." (Doc. 47 at 14, emphasis omitted) Relying upon state law, the City contends: "Where a plaintiff fails to make a sufficient demonstration of impracticality of not being able to obtain a local attorney, and thus reduce costs, recovery for travel time may be denied." (*Id.*, emphasis omitted) (citing *Horsford v. Board of Trustees of Cal. State Univ.*, 132 Cal.App.4th 359, 398 (2005); *Nichols v. City of Taft*, 155 Cal. App. 4th 1233, 1244 (2007))

However, this Court has specifically rejected such an argument, finding that under federal law, non-local counsel are entitled to an award of travel costs, even where the prevailing party has not demonstrated the unavailability of local counsel. For example, in *Moore v. Millenium Acquisitions, LLC*, 2017 WL 1079753 (E.D. Cal. Mar. 21, 2017), the Court rejected the defendants' argument that the plaintiff was "not entitled to bill for travel time" because "district courts may properly allow reasonable travel expenses." *Id.* (citing *Lemus v. Burnham Painting & Drywall Corp.*, 426 Fed. Appx. 543, 546 (9th Cir. 2011); *Nadarajah v. Holder*, 569 F.3d 906, 924 (9th Cir. 2009)); *see also Davis v. Sundance Apts.*, 2008 WL 3166479 (E.D. Cal. Aug. 5, 2008) (holding a plaintiff is not required to make a showing that local counsel were unavailable to receive travel time). Accordingly, the Court finds Plaintiff is entitled to an award of travel costs under federal law.

### 3. Other costs

Plaintiff has provided evidence of other costs incurred in this action related to filing fees, mediation, photocopies, and postage. (Doc. 46-4 at 1-2; Doc. 46-5, Jaramilla Decl. ¶ 5) These

litigation expenses may be awarded as costs. *See Alvarado v. Nederend,* 2011 WL 1883188 at *10 (E.D. Cal. Jan. May 17, 2011) (explaining "filing fees, mediator fees . . . , ground transportation, copy charges, computer research, and database expert fees" are typically identified as litigation costs); *Moore*, 2017 WL 1079753 at *8 (holding a plaintiff "may recover expenses for postage, courier services, and online research under the ADA"). Accordingly, the Court finds Plaintiff is entitled to an award of the remaining costs sought in this action.

**IV.     Conclusion and Order**

Based upon the foregoing, the Court **ORDERS** that Plaintiff's motion for fees in costs (Doc. 46) is **GRANTED IN PART**:

1.     Plaintiff's motion for fees is **GRANTED** in the modified amount of $**94,621.25**; and

2.     Plaintiff's motion for costs is **GRANTED** in the modified amount of **$12,973.75**.

IT IS SO ORDERED.

Dated:     **November 20, 2017**                    **/s/ Jennifer L. Thurston**
                                                                                   UNITED STATES MAGISTRATE JUDGE